IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT

```
--------------------------------------------------------x
                                          :
RICHARD SHANNON,                          :
                                          :
                 Plaintiff,               :          3:20-CV-1192 (RNC)
                                        :
v.                                        :
                                          :
LIBERTY MUTUAL GROUP INC.                 :
                                          :          DATE: JUNE 28, 2021
                 Defendant.               :
                                          :
--------------------------------------------------------x
```

## RULING ON THE PARTIES' CROSS MOTIONS TO COMPEL

I.    <u>BACKGROUND</u>

The plaintiff, Richard Shannon, brings his age discrimination action against the defendant,

Liberty Mutual Group, under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*,

and the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60, alleging that he

was denied the positions for which he applied—Regional General Manager ("RGM") and

Regional Manager ("RM")—on the basis of age. (Doc. No. 1 at 1). Specifically, the plaintiff

maintains that, despite nearly twelve years of exemplary work as a manager under the defendant's

employ, he was passed over on the new RGM and RM roles in favor of younger, less qualified

candidates. (Doc. No. 1 at 3-10). Discovery is scheduled to be completed by July 30, 2021, and

dispositive motions are due on September 30, 2021.

On March 26, 2021, the plaintiff filed a Motion for Discovery Conference in response to the defendant's objections to his three sets of discovery requests.[1] (Doc. No. 47). On March 29, 2021, United States District Judge Robert N. Chatigny referred the plaintiff's motion to the undersigned for resolution. (Doc. No. 48). On April 1, 2021, the undersigned scheduled a hearing on the plaintiff's motion for April 7, 2021 and ordered the parties to file a Joint Status Report detailing the merits of their discovery dispute by April 5, 2021. (Doc. No. 50). In their Joint Status Report, the plaintiff indicated that the parties' dispute centered around what information and documents the plaintiff could obtain about the other applicants for the RGM and RM positions and about the applicants that the defendant ultimately hired. (Doc. No. 51 at 2). Conversely, the defendant maintains that the two primary issues in dispute were the plaintiff's refusal (1) to respond fully to requests to produce all documents related to the various claims in his Complaint and (2) to provide information regarding any treatment he has undergone for emotional distress. (*Id.*).

Following the hearing on April 7, 2021, the Court ordered the parties to meet and confer in order to resolve the discovery dispute and to file another Joint Status Report by April 16, 2021 detailing their progress. (Doc. No. 53). Additionally, the Court scheduled a follow-up Status Conference for April 19, 2021. (Doc. No. 54).

---

[1] On October 23, 2020, the plaintiff served on the defendant his First Set of Requests for Production, to which the defendant responded and objected on December 22, 2020. (Doc. Nos. 51-1 at 2, 51-4 at 2). On December 18, 2020, the plaintiff issued a Revised First Set of Interrogatories, to which the defendant responded and objected on February 16, 2021. (Doc. Nos. 51-2 at 2, 51-4 at 2). Finally, on December 24, 2020, the plaintiff served on the defendant his Second Set of Requests for Production, to which the defendant objected and responded on February 22, 2021. (Doc. No. 51-3 at 2, 51-4 at 2). On November 9, 2020, the defendant issued one set of Interrogatories and Requests for Production, to which the plaintiff issued supplemental responses and objections dated February 19, 2021 and March 10, 2021. (Doc. No. 51 at 2). The parties conferred a number of times in an effort to resolve their disputes and, having only resolved some of them, the plaintiff sent the defendant a letter dated March 10, 2021, outlining the remaining issues. (51-4 at 2-12). The plaintiff alleged that the defendant did not respond to the letter and, accordingly, filed a Motion for Discovery Conference seeking intervention from the Court. (Doc. No. 51 at 1, *see* Doc. No. 47).

In their April 16, 2021 Joint Status Report, the parties indicated that they had come to resolutions on some of their disagreements; however, many outstanding issues remained. (Doc. No. 56 at 1). In an effort to further resolve their pending disagreements, the parties requested that the Court continue the April 19, 2021 hearing and allow counsel to file another Joint Status Report by April 23, 2021. (Doc. No. 56 at 2). The Court granted the continuance and rescheduled the Status Conference for April 26, 2021. (Doc. No. 57). In their April 23, 2021 Joint Status Report, the parties stated that they were still "far from resolving all disagreements" and that they would likely not be able to reach an agreement on all of their disputes. (Doc. No. 58 at 1). The parties stated further that they would exchange letters with supplemental responses to their previous production requests and, by April 30, 2021, they would apprise the Court as to which disagreements were resolvable and which disagreements would require intervention. (Doc. No. 58 at 1-2). Accordingly, the Court scheduled a Status Conference for May 5, 2021 and ordered the parties to file a Joint Status Report detailing which disputes, if any, they were able to resolve by May 3, 2021. (Doc. No. 61). In addition, the Court ordered the parties to include in their Joint Status Report a proposed briefing schedule for whatever issues remained. (*Id.*).

In their May 3, 2021 Joint Status Report, the parties stated that they remained far from reaching a resolution and, consequently, they would have to submit cross motions to compel to the Court. (Doc. No. 62 at 1). In light of the parties' filing, the Court cancelled the Status Conference scheduled for May 5, 2021 and ordered the parties to file their motions to compel by May 11, 2021, memoranda in opposition to the motions by May 18, 2021, and reply briefs by May 25, 2021. (Doc. No. 63). The parties timely filed their motions and supporting memoranda in accordance with the Court's Order. (*See* Doc. Nos. 64-70).

For the reasons stated below, the defendant's Motion to Compel (Doc. No. 65) is GRANTED in part and DENIED in part and the plaintiff's Motion to Compel (Doc. No. 64) is GRANTED in part and DENIED in part.

II.    MOTIONS TO COMPEL

A.    LEGAL STANDARD

Parties may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and is proportional to the needs of the case[.]" FED. R. CIV. P. 26(b)(1). When a party or deponent "fails to answer a question [or] produce documents . . . as requested," Federal Rule of Civil Procedure 37 permits "[the] party seeking discovery . . . [to] move for an order compelling an answer [or]. . . production[.]" FED. R. CIV. P. 37(a)(3)(B).

"[T]he scope of discovery under Fed. R. Civ. P. 26(b) is very broad, encompass[ing] any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in this case." *Maresco v. Evans Chemetics, Div. of W.R. Grace & Co.*, 964 F.2d 106, 114 (2d Cir. 1992) (citation and internal quotation marks omitted). "The Federal Rules afford courts wide discretion in resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing their oppressiveness, and weighing these factors in deciding whether discovery should be compelled." *Chamberlain v. Farmington Sav. Bank*, No. 3:06cv01437 (CFD), 2007 WL 27886421, at *2 (D. Conn. Sept. 25, 2007).

B.    THE DEFENDANT'S DISCOVERY REQUESTS

In its Memorandum in Support of its Motion to Compel, the defendant identifies all of its unresolved interrogatories and requests for production and assigns each to one of six categories under which additional information is sought: (1) the plaintiff's claim for emotional distress; (2) the plaintiff's finances; (3) the plaintiff's claim for attorney's fees; (4) the plaintiff's resources in

responding to the defendant's First Set of Interrogatories; (5) the plaintiff's expert witnesses; and (6) the plaintiff's diaries, calendars, and logs. (Doc. No. 66 at 4-17). Because the defendant maintains different legal bases as to why it is entitled to the discovery at issue, the Court will address each category and the discovery requests therein in turn.

1.    EMOTIONAL DISTRESS

In Interrogatory No. 22, the defendant seeks the identity, contact, and address of each "psychiatrist, psychologist, social worker, counselor, representative of a church or other religious establishment, therapist, or other counselor or advisor" with whom the plaintiff consulted since January 1, 2016. (Doc. No. 66 at 4). Additionally, the defendant requests an authorization to obtain all records concerning the plaintiff's communications with the identified providers. (*Id.*). The defendant asserts that it is entitled to the plaintiff's mental health records because the plaintiff alleged emotional harm as his basis for compensatory damages and, therefore, the information regarding his psychiatric health is relevant to its defense. (*Id.* at 5).

The plaintiff objects on the basis that such information is protected by the psychotherapist-patient privilege. (Doc. No. 67 at 2). Conversely, the defendant argues that, to the extent that the plaintiff put his emotional state at issue by seeking damages for pain and suffering, he waived the psychotherapist-patient privilege and cannot shield himself from his discovery obligations. (Doc. No. 66 at 5). The plaintiff contends, however, that a "garden variety" claim of injury, as is his prayer for compensatory damages in this case, does not effectuate a waiver of the psychotherapist-patient privilege. (Doc. No. 67 at 2).

The Supreme Court, in establishing the existence of the psychotherapist-patient privilege, noted that maintaining confidentiality in the communications between a therapist and her patient "promotes sufficiently important interests to outweigh the need for probative evidence." *Jaffee v.*

*Redmond*, 518 U.S. 1, 9-10 (1996) (citation and internal quotation marks omitted). Accordingly, the Court concluded that the psychotherapist-patient privilege would protect a claimant from compelled disclosures regarding the conversations and written notes taken during counseling sessions under Federal Rules of Evidence 501. *Id.* at 18.

Although the *Jaffee* court concluded that this privilege was not absolute, it did not establish the contours under which a waiver of the privilege would apply. *Jaffee*, 518 U.S. at 15 n. 14. The Second Circuit added clarity to the question of what constitutes a forfeiture of the psychotherapist-patient privilege when it decided *In re Sims*, 534 F.3d 117 (2d Cir. 2008), as follows:

> [W]e reject respondents' contentions that anybody who requests damages for pain and suffering has waived the psychiatric privilege because the psychiatric records might conceivably disprove the experiencing of the pain and suffering . . . that any claim of even . . . garden variety injury waives the psychotherapist-patient privilege . . . and that a plaintiff's mental health is placed in issue whenever the plaintiff's claim for unspecified damages may include some sort of mental injury . . . .

*Id.* at 141 (citations and internal quotations marks omitted). Courts in this circuit have understood *Sims* to stand for the proposition that a claimant's allegation of mental distress or pain and suffering, absent any additional claim sounding in emotional distress, does not impliedly waive the psychotherapist-patient privilege. *See Safeco Ins. Co. of Am. v. Vecsey*, 259 F.R.D. 23, 30 (D. Conn. 2009) ("Mrs. Vecsey's allegation of mental distress—which is unaccompanied by any independent cause of action for mental distress, such as negligent or intentional infliction of emotional distress, or claim for a specific mental disorder or condition—is precisely the sort of garden variety claim that the Second Circuit has held . . . does not impliedly waive the privilege." (internal quotation marks omitted)); *see also Jacobs v. Conn. Cmty. Tech. Colls.*, 258 F.R.D. 192, 195 (D. Conn. 2009) ("Here, although the plaintiff alleges that he has suffered and continues to suffer economic losses and emotional distress as a result of the discrimination . . . he has not plead a separate cause of action for emotional distress. . . . Accordingly, if the court were to confine its

analysis to the pleadings alone it would conclude, consistent with the narrow approach adopted by *Sims*, that the plaintiff had not waived the privilege because his complaint asserts no more than a garden variety claim for emotional distress." (citations and internal quotation marks omitted)).

In the present case, the plaintiff does not make any independent emotional distress claim, nor does he attribute any mental condition to the alleged conduct of the defendant. In fact, nowhere in the plaintiff's Complaint does he mention his mental health let alone allege that the defendant's conduct, either negligently or intentionally, caused emotional distress. To the extent that the defendant relies on the plaintiff's prayer for compensatory damages to support its contention that the plaintiff impliedly waived the psychotherapist-patient privilege, *In re Sims* and its progeny foreclose it.

In addition to its claim of entitlement to the plaintiff's mental health records, the defendant makes two ancillary arguments that require a joint analysis. First, the defendant maintains that, to the extent that Interrogatory No. 22 only requests the identities of the psychiatrists with whom the plaintiff has communicated, the plaintiff should be compelled to produce that information because it is outside the ambit of the psychotherapist-patient privilege. (Doc. No. 70 at 3, Doc. No. 66 at 4-5). Second, regarding Interrogatory No. 21, the defendant requests that the plaintiff identify each "physician, physician's assistant, other healthcare worker, hospital, or healthcare facility" from which he obtained services and, similarly, produce an authorization for the defendant to obtain all records from the entities identified. (Doc. No. 66 at 9). To that end, the defendant maintains that it is entitled to the identities and records of the plaintiff's healthcare providers because, in order to defend against the plaintiff's emotional distress claim, it must be apprised fully of the plaintiff's medical history and any physical stressors that could exacerbate his mental health. (*Id.* at 9-11).

Contrary to the defendant's assertions, *Sims* and its progeny establish rather conclusively that the plaintiff's emotional distress claim is one of the garden variety.[2] "Garden variety claims refer to claims for compensation for nothing more than the distress that any healthy, well-adjusted person would likely feel as a result of being so victimized; claims for serious distress refer to claims for the inducement or aggravation of a diagnosable dysfunction or equivalent injury." *E.E.O.C. v. Nichols Gas & Oil, Inc.*, 256 F.R.D. 114, 121 (W.D.N.Y. 2009) (citation and internal quotation marks omitted). Accordingly, the plaintiff has not waived his psychotherapist-patient privilege.

Having concluded that the plaintiff's emotional distress is not at issue, the question remains as to whether the defendant's requests for contacts and health records are relevant and proportional pursuant to Rule 26 of the Federal Rules of Civil Procedure. Neither party argues, nor could they,

---

[2] To the extent that the defendant cites to numerous unpublished opinions to assert that the opposite is true, the Court is unpersuaded. (*See* Doc. No. 66 at 6-9). Furthermore, the defendant's attempt to distinguish *Sims* from this case does little to advance its argument. (*See* Doc. No. 70 at 4). Specifically, the defendant asserts that the claimant in *Sims* never put his emotional state at issue because (1) he withdrew all of his emotional distress claims and (2) the court applied a fairness analysis and determined that the claimant's *pro se* deposition testimony did not constitute a waiver of the psychotherapist-patient privilege. (*Id.* at 5-6). The defendant's recitation of the facts in *Sims* is incomplete and misleading. First, the defendant ignores the fact that the claimant only withdrew "any claim Mr. Sims may have asserted to recover for 'non-garden variety' emotional distress injuries, including 'Plaintiff's claim that he has become frightened of all knives as a result of the Defendants' alleged misconduct.'" *Sims*, 534 F.3d at 125. In response, the court issued an order stating "[t]o the extent that Mr. Sims intends to testify generally that he was upset *as a result* of an assault, I consider his claim 'garden variety' and not one which would warrant the broad disclosure sought by the defendants." *Id.* (emphasis in original). Indeed, the plaintiff in this case is analogous to the claimant in *Sims* insofar as both parties pursued a generalized emotional distress claim of the garden variety that was not plead as a separate cause of action. *See id.* ("But Mr. Sims did not plead in his complaint, or testify at his deposition, that he was seeking to recover for those emotional injuries—*i.e.*, he did not put them at issue for purposes of this litigation."). Second, although the *Sims* court did consider fairness in its analysis, the defendant here ignores the fact that the court also considered the claimant's letter indicating that he did not intend to offer certain evidence tending to show that his mental condition was at issue. *See id.* at 126 ("[W]e do not intend to offer: fact or expert testimony about a psychological disorder; evidence concerning conversations between Mr. Sims and psychiatric personnel; evidence concerning Mr. Sims's housing in the psychiatric satellite unit . . . [or] evidence that Mr. Sims's mental health status affects his behavior."). The court, relying on that letter, concluded, "Sims made it clear that he will not offer any evidence as to his mental health, or any psychological disorder, or his fears, or any non-garden-variety emotional distress resulting from the alleged assault, *etc.*, we conclude that it was not within the permissible limits of discretion for the district court to conclude that respondents would be prejudiced if Sims were not required to disclose his mental health records." *Id.* at 141. The defendant failed to submit any evidence in its briefings to substantiate its repeated assertions that the plaintiff intends to pursue significant emotional distress claims. Accordingly, this Court rejects the defendant's argument regarding the inapplicability of *Sims*.

that there is a physician-patient privilege that implicates the defendant's request. *See Feltenstein v. City of New Rochelle*, No. 14-CV-5434 (NSR), 2018 WL 3752874, at *4 (S.D.N.Y. August 8, 2018) ("Although there is no physician-patient privilege in federal law, [p]laintiff does have a privacy interest in [his] medical records." (citations and internal quotation marks omitted)). In light of that fact, and notwithstanding the presence of the psychotherapist-patient privilege, the Court must determine the relevance and proportionality of the defendant's Interrogatory Nos. 21 and 22 and Request for Production No. 3.

Given the broad scope of relevance under Rule 26(b), the defendant's requests for the identities and contacts of the physicians and psychiatrists with whom the plaintiff communicated are relevant insofar as that information could reasonably lead to the discovery of admissible evidence. *See Tucker v. Am. Intern. Group, Inc.*, 281 F.R.D. 85, 91 (D. Conn. 2012) ("Information that is reasonably calculated to lead to the discovery of admissible evidence is considered relevant for the purposes of discovery."). Furthermore, no privilege exists in this instance that would foreclose the defendant's access to a list of the plaintiff's treaters and their contacts. *See Perry v. City of New Haven*, No. 3:11-cv-1485 (RNC), 2012 WL 3887061, at *2 (D. Conn. Sept. 6, 2012) ("[T]he psychotherapist-patient privilege . . . does not extend to information regarding the occurrence of treatment, including whether a psychotherapist treated [him], the dates of such treatment, and the length of treatment on each date." (citations and internal quotation marks omitted)).

Finally, in assessing proportionality, the Court must balance the interests of the parties to determine whether to compel disclosure of the discovery at issue. *See Tucker*, 281 F.R.D. at 91 ("[P]ursuant to Rule 26(b)(2)(C), the court may limit or deny discovery *sua sponte* or upon motion, when, for example, 'such discovery sought is unreasonably cumulative or duplicative, or can be

obtained from some other source that is more convenient, less burdensome, or less expensive.'"
(citing FED. R. CIV. P. 26(b)). To the extent that Interrogatories 21 and 22 only request the name,
address, and telephone number of the plaintiff's providers, as well as the dates and reasons for
treatment dating back only five years, the requests are not unreasonably burdensome, cumulative,
or expensive. *See* FED. R. CIV. P. 26(b)(2)(C). Furthermore, by providing only the identity and
contact for each of his providers, the plaintiff's privacy interest is not implicated and, thus, does
not outweigh the defendant's need for the information.

The defendant's broader requests for signed authorizations do, however, implicate the
plaintiff's privacy interest and, consequently, require the Court to limit the scope of the disclosures.
*See* FED. R. CIV. P. 26(c); *see also Nichols Gas & Oil, Inc.*, 256 F.R.D. at 122 (W.D.N.Y. Mar. 9,
2009) ("Rule 26(c) authorizes the court to fashion a set of limitations that allows as much relevant
information to be discovered as possible, while preventing unnecessary intrusions into the
legitimate interests—including privacy and other confidentiality interests—that might be harmed
by the release of the material sought." (citation and internal quotation marks omitted)). Unlike the
defendant's more limited requests seeking the identities of the plaintiff's providers, the burden on
the plaintiff imposed by Interrogatory Nos. 21 and 22 and Request for Production No. 3 is apparent.
The disproportionality of the requests is highlighted by the fact that the plaintiff has made no
indication that he intends to allege any physical injuries arising out of the defendant's conduct,
and, moreover, has not waived his psychotherapist-privilege. This is of particular significance
because the defendant's claim to the records at issue is predicated on its need to prepare and guard
against certain allegations—allegations the plaintiff is precluded from making without waiving his
privilege. To that end, if the plaintiff did pursue a claim alleging physical or mental injuries, the

defendant certainly would have the opportunity to seek medical authorizations.[3] *See Green v. St. Vincent's Medical Center*, 252 F.R.D. 125, 127-28 (D. Conn. 2008).

In light of the plaintiff's privacy interest and the psychotherapist-patient privilege, the defendant is not entitled to signed medical authorizations. Accordingly, the plaintiff shall disclose only the information requested in Interrogatory Nos. 21 and 22 related to the name, address, and telephone number of each of his psychiatric and physical providers with whom he obtained services, as well as the dates of and reasons for such services.

2.     <u>FINANCIAL RECORDS</u>

In Interrogatory No. 6, the defendant requests information regarding the plaintiff's income and fringe benefits since September 1, 2019, which includes "wages, inheritance, workers' compensation payments, disability payments, unemployment insurance benefits, social security or other governmental benefits, grants, loans, welfare payments, public aid, benefits under private insurance policies, compensation as an independent contractor, broker, temporary employee or from self-employment, or support received from any other source, including relatives." (Doc. No. 66 at 11). In its Request for Production No. 11, the defendant requests "any and all documents concerning compensation or income of any sort" received by the plaintiff from any source from 2018 to the present, which includes, among other things, disclosure of all state and federal income tax returns and Form W-2's, Form 1099s and Form 1040s. (Doc. No. 66 at 11). Similarly, in Request for Production No. 10, the defendant seeks documents regarding the plaintiff's retirement

---

[3] In his Memorandum in Opposition to the Defendant's Motion to Compel, the plaintiff concedes this exact point, noting that, rather than giving the defendant "free rein to peruse" his medical records, "the prudent approach is to evaluate the potential relevance of specific records in light of the factual record as it develops. Should [the plaintiff] testify that [the defendant's] discrimination caused him specific physical ailments, [the defendant] at that point might be entitled to obtain medical records concerning those ailments specifically." (Doc. No. 67 at 6).

planning and communications with financial advisors, bankers, accountants, or anyone else providing financial consultation. (*Id.*).

The plaintiff objects to the defendant's requests on the basis of proportionality, arguing that the discovery requests "are not proportional to the needs of the case and improperly invade [his] personal privacy insofar as [they] seek information about his income that is unrelated to work that does not constitute mitigation of his economic losses." (Doc. No. 67 at 7). Notwithstanding his objection, the plaintiff did disclose his work-related income, which he maintains exclusively came from working under the defendant's employ. (Doc. No. 67-1 at 29). In a supplemental response to Interrogatory No. 6, the plaintiff stated that he had "not received any income since September 1, 2019, from any inheritance disability payments, unemployment benefits, or pensions, nor ha[d] he received any money in connection with any workers' compensation claim." (*Id.*).

The plaintiff concedes that he is withholding his bank and investment statements, maintaining that those documents are of "no relevance whatsoever," but adds that he has produced all documents concerning his active income. (Doc. No. 67 at 8). Additionally, the plaintiff objects to the disclosure of his federal and state tax returns, citing *Gattegno v. Price Waterhouse Coopers, LLP*, 205 F.R.D. 70, 73 (D. Conn. 2011) for the proposition that those documents are protected by a "qualified privilege" and contain information that "may be obtained through less intrusive methods." (Doc. No. 67 at 8). Relying further on *Gattegno*, the plaintiff asserts that tax returns are only discoverable if "(1) it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and (2) there is a compelling need therefore because the information contained therein is not otherwise readily obtainable." *Id.* at 73. (*Id.*).

In response, the defendant contends that the plaintiff, by putting his level of income at issue in this litigation, has opened up his personal finances to discovery. (Doc. No. 70 at 7). The

defendant contends further that the plaintiff should be compelled to produce the financial records at issue because the plaintiff has requested that the defendant turn over complete payroll records, Form W-2s and wage and tax statements since January 1, 2018 for "all people who have held the title of [RGM] and [RM] for Liberty Mutual." (Doc. No. 70 at 7; *see* Doc. No. 64-3 at 90). To the extent that there is a Protective Order in this case (*See* Doc. No. 7), the defendant argues that the plaintiff cannot use it to shield his financial records while probing the defendant for the same sensitive information. (Doc. No. 70 at 8). The defendant also challenges the plaintiff's reliance on *Gattegno*, noting that the court "recognized that information concerning the plaintiff's income in that case was relevant." (*Id.* at 9). The defendant cites to other cases in this district in which the court has granted motions compelling disclosure of a plaintiff's federal and state tax returns. (*Id.*).

In *Gattegno*, like in this case, the defendant served on the plaintiff a motion compelling her to disclose her and her husband's joint tax returns. *Gattegno*, 205 F.R.D. at 70. The plaintiff submitted her tax returns to the court for *in camera* review to determine whether they should be produced and whether they should be subject to a protective order. *Id.* at 71. In denying the defendant's motion to compel, the court applied a two-part test established in *Cooper v. Hallgarten & Co.*, 34 F.R.D. 482 (S.D.N.Y. 1964). The test provides that tax returns are discoverable if "(1) it clearly appears they are relevant to the subject matter of the action or to the issues raised thereunder, and (2) there is a compelling need therefor because the information contained therein is not otherwise readily obtainable." *Gattegno*, 205 F.R.D. at 73. The court concluded that the plaintiff's tax returns satisfied the first prong but, because the "defendant already ha[d] such information in its possession," the court determined that the second prong was not satisfied. *Id.*

In reaching its conclusion, the court noted that, in addition to the defendant subpoenaing the plaintiff's employer for her earning records, the plaintiff had also disclosed her W-2 and 1099

forms. *Id.* Additionally, the defendant had merged with the plaintiff's prior employer which, the court reasoned, would presumably afford the defendant access to the plaintiff's prior employment records. The defendant argued, however, that the only production that would provide adequate assurances as to the accuracy of the plaintiff's finances were her tax returns, noting that the plaintiff could circumvent production by omitting prior employers or withholding W-2 forms. *Id.* at 73-74.

The court recognized the importance of the *Cooper* test for disputes such as this, stating that the test "is designed to prohibit unnecessary disclosure of confidential information . . . where defendant already has the answers that it seeks." *Id.* at 74. In light of the plaintiff's privacy interest and the defendant's concerns over completeness, the court reasoned that "an *in camera* review [was] particularly appropriate when perhaps [the] defendant is simply unable to confirm that it does have those answers." *Id.* After conducting the *in camera* review, the court reasoned that, although the tax returns included significantly more information than the plaintiff's W-2 forms, the defendant had not demonstrated that the plaintiff's income beyond wages and salaries was relevant to the dispute. *Id.* Accordingly, the court concluded that the defendant was not entitled to disclosure of the plaintiff's tax returns because the plaintiff had shown that the defendant possessed the information it was seeking, thus, failing the second prong of the *Cooper* test. *Id.*

In the present case, the financial records at issue are (1) the plaintiff's tax returns, (2) the plaintiff's financial statements, and (3) the plaintiff's passive investment income. (*See* Doc. Nos. 67-2 at 29, 67-2 at 8). The defendant maintains that these records are highly relevant and necessary for its defense against the plaintiff's claim for front pay damages and its affirmative defense that the plaintiff failed to mitigate his damages. (Doc. No. 66 at 12).

Although the plaintiff's financial statements and passive investment income *may* be relevant to the subject matter of this case under the broad scope of Rule 26, the plaintiff's

supplemental disclosures are such that the defendant now has the information that it is seeking. Notably, the plaintiff has produced his W-2s, Form 1099s, and all other responsive documents to the defendant's Request for Production No. 11, with the exception of his tax returns and his financial documents related to his investment income. (Doc. No. 67-2 at 9). The defendant now has in its possession the financial records needed to inform it of the plaintiff's income, salary, and work history during the relevant period. The defendant has not established why it *needs* anything beyond the plaintiff's most recent work history and income to assert its affirmative defense. It is also unclear how the plaintiff's "full financial profile" is necessary for the defendant to challenge the plaintiff's claim of front pay damages or is relevant to the plaintiff's mitigation of his economic losses. (Doc. No. 66 at 12). Accordingly, the Court denies the defendant's Motion to Compel as to Request for Production No. 10. *See Favale v. Roman Catholic Diocese of Bridgeport*, 233 F.R.D. 243, 246 (D. Conn. 2005) ("The district court enjoys broad discretion when resolving discovery disputes, which should be exercised by determining the relevance of discovery requests, assessing oppressiveness, and weighing these factors in deciding whether discovery should be compelled." (citation and internal quotation marks omitted)); *see also Collens v. City of New York*, 222 F.R.D. 249, 253 (S.D.N.Y. 2004) ("Even where information may be relevant, discovery should not be compelled if the information is privileged or if there is good cause for a protective order.").

Turning next to the defendant's Request for Production No. 11, the well-reasoned decision in *Gattegno* informs the Court's conclusion that the defendant is not entitled to the plaintiff's tax returns. Although the plaintiff's tax returns are relevant to the subject matter of this dispute, the defendant has not demonstrated that there is a compelling need for their production because the information they contain is already available to the defendant. *See Gattegno*, 205 F.R.D. at 73. As stated previously, the plaintiff has otherwise complied with the defendant's Request for Production

No. 11 in that he disclosed his W-2s, paystubs, and "all documents concerning his job search efforts." (Doc. No. 67 at 8). Again, to the extent that the defendant seeks the documents at issue to defend against a front pay damages claim and to assert a failure to mitigate claim, it has the information it needs to do so. If the *Cooper* test is "designed to prohibit unnecessary disclosure of confidential information . . . where defendant already has the answers that it seeks," then the disclosures should not be permitted. *Id.* at 74. The Court therefore denies the defendant's Motion to Compel as to Request for Production No. 11.

### 3. ATTORNEY'S FEES

In Interrogatory No. 11, the defendant requests information regarding the plaintiff's "method of computation" for any attorney's fees that he has paid, accrued, and agreed to pay, as well as the identity of the person to whom such fees were paid or will be paid. (Doc. No. 66 at 13). Relatedly, in the defendant's Request for Production No. 7, the defendant requests records and invoices associated with the plaintiff's attorney's fees. (*Id.*).

In his April 30, 2021 responses to the defendant's interrogatories, the plaintiff objects to Interrogatory No. 11 on both proportionality and privilege grounds. (Doc. No. 67-1 at 11-12). In his memorandum in opposition, however, the plaintiff only appears to challenge Interrogatory No. 11 on proportionality grounds, arguing that information regarding his fee arrangements and monies paid is irrelevant. (Doc. No. 67 at 10). To the extent that the plaintiff maintains his privilege objection, it is without merit, as it is well established that the attorney-client privilege does not extend to billing records or fee information. *Lefcourt v. United States*, 125 F.3d 79, 86 (2d Cir. 1997) ("As a general rule, a client's identity and fee information are not privileged."); *see also Selevan v. U.S. Securities & Exchange Comm.*, 482 F. Supp. 3d 90, 94 (S.D.N.Y. 2020) ("Indeed,

financial statements, even if reflecting monetary transfers between attorney and client, are not, without more, privileged.").

The question of proportionality and relevance, however, is less certain, as both parties cite to a number of competing cases from different circuits in their briefings. (*See* Doc. Nos. 66 at 14, 67 at 10-11, 70 at 9-10). The defendant relies on *Timbie v. Eli Lilly & Co.*, No. 3:08-cv-979 (PCD), 2009 WL 10676980, at *3 (D. Conn. Oct. 16, 2009), where this court determined that the plaintiff, having pleaded attorney's fees as damages, was required to disclose them pursuant to Rule 26(a)(1)(A)(iii) of the Federal Rules of Civil Procedure. Specifically, the court reasoned that, because a plaintiff's initial disclosures under Rule 26(a)(1)(A)(iii) "must include a computation of each category of claimed damages," documents concerning the plaintiff's fee arrangements were relevant to the computation of attorney's fees. *Id.*; FED. R. CIV. P. 26(a)(1)(A)(iii).

Conversely, the plaintiff relies on a collection of cases from varying circuits that stand for the proposition that a plaintiff need not disclose information concerning attorney's fees because it is not relevant to liability and does not become relevant until a judgment is rendered. *See Smith v. AS Am., Inc.*, 829 F.3d 616, 624 (8th Cir. 2016) ("Regardless of when attorney's fees are requested, the court's decision of entitlement to fees will therefore require an inquiry separation from the decision on the merits—an inquiry that cannot even commence until one party has 'prevailed.'" *Young v. Powell*, 729 F.2d 563, 566 (8th Cir. 1984) (quoting *White v. New Hampshire Dep't. of Emp't Sec.*, 455 U.S. 445, 451-52 (1982)); *see also V5 Techs. v. Switch, Ltd.*, 334 F. R. D. 306 310-11 (D. Nev. 2019) ("Of the courts that have addressed the issue, however, they have almost universally held that when a statute provides attorneys' fees for a prevailing party, fee arrangements and expenses are not discoverable until liability is established. . . . Such discovery

is not relevant because it does not bear on an element of any claim or defense that must be proven at trial." (citations and internal quotation marks omitted)).

In line with courts in this circuit that have held similarly, this Court agrees that attorney's fees are not relevant at this stage in the litigation. *See Antolini v. McCloskey*, 335 F.R.D. 361, 363 (S.D.N.Y. 2020) ("Rule 26(a) does not require these disclosures. A computation of attorney's fees is simply not a required disclosure under Federal Rule of Civil Procedure 26(a). . . . Even when attorney's fees are requested in the complaint, the plaintiff is not required to provide a computation of the amount, because entitlement to, and amount of, fees cannot be known until one party has prevailed." (citations and internal quotation marks omitted)); *see also Abdel-Samed v. ING Life Ins. & Annuity Co.*, No. 3:12-CV-925 (RNC), 2013 WL 1962673, at *1 (D. Conn. May 10, 2013) ("Notwithstanding the potential relevance of a fee agreement to a post-trial application for fees, it has no bearing on liability. As this case is still in the pre-trial phase, defendants' request for plaintiff's attorney fee agreement is premature.").

Accordingly, the Court denies the defendant's Motion to Compel as to its Interrogatory No. 11.

### 4. DOCUMENTS REVIEWED

In its Request for Production No. 1, the defendant requested that the plaintiff produce any and all documents that he "reviewed, identified, or referred to, and/or relied upon" when preparing his responses to its interrogatories. (Doc. No. 66 at 15). In his second supplemental response, the plaintiff indicated that he provided all documents which he identified or referred to in his response to the defendant's interrogatories, however, the plaintiff maintains his objection insofar as he argues that the documents which he "reviewed" in forming his responses—"meaning any

document he looked at to determine its potential responsiveness"—are not relevant to this matter. (Doc. No. 67-2 at 2).

In its May 25, 2021 Reply Memorandum, the defendant clarifies that it is only seeking documents reviewed by the plaintiff "in preparing his responses to the interrogatories—Liberty Mutual has not requested that he produce all documents he reviewed in deciding what to include in his responses to requests for production." (Doc. No. 70 at 10).

To the extent that they are relevant and proportional to the needs of the case, the defendant is entitled to the documents that the plaintiff reviewed in forming his substantive responses to its interrogatories. *See* FED. R. CIV. P. 26(b)(1). It appears, however, from the plaintiff's second supplemental response, that he has indeed already provided all documents which formed the bases for his substantive interrogatory responses. To the extent that the plaintiff has not provided all of these documents, he should do so on or before July 23, 2021.

5.     EXPERT WITNESS MATERIALS

In its Request for Production No. 12, the defendant requests any and all documents "prepared, reviewed, or relied upon by each expert witness" that the plaintiff will call, or expects to call, to testify at trial, as well as all communications had between the plaintiff, his counsel, and his expert concerning, among other things, compensation, data, and expert opinions. (Doc. No. 66 at 16). The plaintiff objects to this request on two grounds. First, the plaintiff notes that he has not yet determined or disclosed any testifying expert witnesses and, therefore, any communications had with potential experts remains covered by the work product doctrine pursuant to Rule 26(b)(3)(A) of the Federal Rules of Civil Procedure. (Doc. No. 67 at 14). Second, the plaintiff asserts that, even after expert disclosures, the defendant still is not entitled to certain documents it

seeks, namely, drafts of any report or disclosure prepared by the testifying expert because it is protected by work product privilege. (*Id.*).

The Court agrees that the defendant is not yet entitled to any communications had between the plaintiff, the plaintiff's counsel, and any prospective testifying expert witness because the plaintiff has not yet identified nor disclosed testifying expert witnesses. Furthermore, to the extent that the plaintiff does identify and disclose an expert witness, the defendant is not entitled to draft reports because they are protected under Rule 26(b)(4)(B) of the Federal Rules of Civil Procedure. *See* FED. R. CIV. P. 26(b)(4)(B); *see also Deangelis v. Corzine*, 11 Civ. 7866 (VM) (JCF), 2016 WL 93862, at *3 (S.D.N.Y. Jan. 7, 2016) ("On the other hand, 'the driving purpose of the 2010 amendment' to Rule 26 was to protect 'attorney mental impressions, conclusions, opinions, or legal theories' from discovery; '[t]he protections for draft reports and attorney-expert communications were targeted at the areas most vulnerable to the disclosure of opinion work product.' *Republic of Ecuador v. Mackay*, 742 F.3d 860, 870 (9th Cir. 2014); *accord Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1194-95 (11th Cir. 2013); *Republic of Ecuador v. For the Issuance of a Subpoena Under 28 U.S.C. § 1782(a)*, 735 F.3d 1179, 1185-87 (10th Cir. 2013); *see also Wenk* [*v. O'Reilly*, No. 2:12-CV-474], 2014 WL 1121920, at *4 (noting that 26(b)(4)(B) protects drafts because 'the drafting process ordinarily entails communications between the expert and counsel' and that disclosing drafts 'is likely to include revelation of attorney work product').").

Accordingly, the defendant's Motion to Compel is denied as to its Request for Production No. 12 without prejudice to refiling after the plaintiff has disclosed his expert witnesses.

### 6. DIARIES, CALENDARS, AND LOGS

In its Request for Production No. 8, the defendant seeks any and all "notes, diaries, logs, calendars, [and ] journals" kept by the plaintiff since January 1, 2019 through the time of trial for

the purpose of obtaining information regarding his past and continued work performance under the defendant's employ. (Doc. Nos. 66 at 17, 70 at 11). The defendant asserts that it is entitled to these documents because the plaintiff, by initiating this suit, has put his work performance at issue. (*Id.*).

The plaintiff objects to the scope of the defendant's request insofar as it seeks documents regarding his current employment, which is irrelevant to his claim of employment discrimination. (Doc. No. 67 at 16-18). In his supplemental responses, the plaintiff indicated that he would produce the pages of his calendar that concerned the events discussed in his Complaint and his interrogatory responses, but would not produce any notebooks or calendar entries after August 15, 2019, because they do not contain any information about his performance related to his employment discrimination claim. (*Id.*).

The Court is not persuaded by the plaintiff's argument that the relevant timeframe for discovery into his calendar entries and notebooks cannot come after August 15, 2019. The fact that the defendant's Request for Production No. 8 seeks documents after the hiring decision at issue was made, does not take away from the probative value of the plaintiff's present-day notes and logs. Documents following the plaintiff's rejection from the RGM and RM positions can still elucidate his past job performance. In fact, the responsive documents following that decision may be of even greater value to the defendant.

Accordingly, the defendant's Motion to Compel is granted as to its Request for Production No. 8, and the plaintiff must produce responsive documents dating back to January 1, 2019 by July 23, 2021.

C.     THE PLAINTIFF'S DISCOVERY REQUESTS

In his May 25, 2021 Reply Memorandum, the plaintiff indicates that the defendant's discovery responses, having been supplemented twice following his May 11, 2021 Motion to Compel (Doc. No. 64), rendered moot some of his Motion. (Doc. No. 69 at 1). To the extent that the defendant allegedly "misstates" what it has produced and misapprehends what the plaintiff is entitled to receive, the plaintiff identifies six topics under which he seeks additional information and documents: (1) the Northeast RGM position; (2) The Connecticut RM position; (3) the New York RM position; (4) the performance histories of the plaintiff and the individuals selected over him; (5) other evidence of age discrimination; and (6) the plaintiff's compensation and damages. (Doc. No. 69 at 2-9). The Court will address each topic in turn.

1.     THE NORTHEAST RGM POSITION

The plaintiff seeks additional information and documents regarding the defendant's selection of Cameron Finch as the RGM for the Northeast region. To that end, the plaintiff identifies six sub-issues where he asserts that the defendant's discovery responses are either deficient or withheld entirely.

First, in Interrogatory No. 3, the plaintiff asked the defendant to "[d]escribe the process involved in making the decision to hire Cameron Finch for the Northeast Regional General Manager position . . . including the role of each person who was 'involved in making the decision.'" (Doc. No. 69-1 at 17-18). In its May 13, 2021 supplemental response, the defendant stated, "A panel consisting of four of Chris Capone's direct reports—Frank Gagliano, Dave May, Rob Maloney, and Eric Anderson—vetted applicants for the RGM position and proposed ten candidates for Mr. Capone's consideration. Mr. Finch was interviewed by two of the panelists, and

he was identified as one of the top 10 candidates. Mr. Finch then interviewed with Chris Capone and was selected as one of the seven RGMs." (*Id.* at 18-19).

The defendant maintains that its supplemental response to Interrogatory No. 3 sufficiently identifies the decision makers and describes the decision-making process as to the Northeast RGM position and its selection of Mr. Finch. (Doc. No. 68 at 7-8). Conversely, the plaintiff asserts that the defendant's response is "far from complete" insofar as it does not identify the ten finalists. (Doc. No. 69 at 2).

The plaintiff's Interrogatory No. 3 did not request the information that he now seeks from the defendant. Specifically, the plaintiff requested only the names and roles of each person involved in the selection of Mr. Finch, which the defendant provided. Accordingly, the plaintiff's Motion to Compel as to his Interrogatory No. 3 is denied.

Second, in his Request for Production No. 2, the plaintiff sought "[a]ll documents upon which the decision-maker(s) relied to select Cameron Finch for the position of Northeast Regional General Manager." (Doc. No. 64-1 at 8). In its Memorandum in Opposition, the defendant asserted that it identified nine pages of documents which it produced in response to the plaintiff's request and, "[t]o the best of its knowledge, these are the only documents that exist that were relied upon." (Doc. No. 68 at 8). In its May 13, 2021 supplemental response, however, the defendant stated that "it believes there are additional documents that would be responsive" to the plaintiff's "overbroad request" but, based on its objections, it continues to withhold them. (Doc. No. 69-2 at 9).

To the extent that the defendant withheld responsive documents based on its contention that the plaintiff's request is overbroad, the defendant, having offered no legal or factual basis in support of its objection, must respond fully to the plaintiff's Request for Production No. 2. Accordingly, the plaintiff's Motion to Compel as to his Request for Production No. 2 is granted.

Third, in Request for Production No. 1, the plaintiff asked for all documents, "including all communications, concerning the process by which Cameron Finch was selected for the position of Northeast Regional General Manager . . . includ[ing] all applications for the position; all solicitations for applications . . . all correspondence concerning whom to interview and the scheduling of interviews; and all notes concerning the interviews and the decision-making process." (Doc. No. 69-2 at 7). In its May 18, 2021 supplemental response, the defendant noted that it produced emails in which candidates for the RGM and RM positions expressed their interest in being considered for a role in a particular geographic region and a spreadsheet in which the RGM selection process was tracked. (Doc. No. 69-4 at 9). The plaintiff first argues that, although the defendant produced some emails in its supplemental response, the defendant did not indicate whether it had produced *all* of the relevant emails and that "emails from most of the identified applicants are missing." (Doc. No. 69 at 2). The plaintiff also maintains that the spreadsheet did not include Jeremy Conrey, who the defendant selected for the RM position for which he applied. (*Id.*).

Accordingly, the plaintiff's Motion to Compel as to Request for Protection No. 1 is granted. The defendant should indicate in its response to the plaintiff's Request for Production No. 1 whether it produced all of the responsive emails and, if not, it must produce any remaining emails regarding the applicants' geographic preference, as well as a spreadsheet that includes Mr. Conrey's application by July 23, 2021.

Fourth, as to the five decision-makers that the defendant identified in its May 13, 2021 supplemental response to Interrogatory No. 3, the plaintiff seeks their email communications regarding the selection of Mr. Finch. (Doc. No. 69 at 2-3). The defendant contends that the Court should not require further production because it would be "virtually impossible" for it to search

and locate "every email concerning every decision regarding the hiring of all the RMs reporting to Cam Finch and the RGMS in the Northeast Region." (Doc. No. 68 at 9). The defendant, however, overstates the plaintiff's request. The plaintiff seeks only the email communications among the five identified decision-makers wherein they discussed Mr. Finch's application, interviews, and subsequent hiring. Notably, the plaintiff gives a six-week timeframe when the hiring process occurred, which adds another level of particularity that renders the defendant's document search reasonable and far from "virtually impossible." (*See* Doc. No. 69 at 2-3).

Accordingly, the plaintiff's Motion to Compel is granted as to his Interrogatory No. 3, and the defendant must produce the decision-makers' email communications concerning Mr. Finch's hiring by July 23, 2021.

Fifth, the plaintiff, in his Request for Production No. 1, sought email communications between Mr. Finch and the defendant about his application for the position of RGM. (Doc. No. 69 at 3). Specifically, the plaintiff wanted to know if Mr. Finch was encouraged to apply and how he corresponded with the decision-makers about the position. (*Id.*). In response, the defendant produced "298 pages of emails sent which advised interviewers and applicants, including Mr. Finch, of their scheduled interviews for the RGM position." (Doc. No. 68 at 9-10). The defendant maintains that it has produced all documents responsive to Request for Production No. 1 and that the plaintiff "may inquire of Mr. Finch at his deposition concerning the interrogatory-type questions he poses above." (*Id.*).

The plaintiff is entitled to the defendant's outgoing email solicitations directed to Mr. Finch, as described in Request for Production No. 1, to the extent that this correspondence exist. Accordingly, the defendant must produce the communications by July 23, 2021. If the defendant

has, in fact, produced all responsive communications to the plaintiff, then no further production is required.

Sixth, the plaintiff's Interrogatory No. 2 sought the identity and date of birth for every person that the defendant interviewed for the Northeast RGM position for which Mr. Finch was selected. (Doc. No. 64-2 at 6). In response, the defendant objected on several grounds, asserting that Interrogatory No. 2 sought confidential information of third parties, was overly broad and burdensome, and was duplicative. The defendant's objections are without merit, as the plaintiff's interrogatory is neither overly broad nor burdensome. The plaintiff, pursuant to its *age discrimination* claim, seeks the dates of birth of a narrowly drawn class of individuals—the individuals interviewed for the Northeast RGM position—all of whom submitted applications to the defendant containing the information sought. The plaintiff's need for this information, which is different than his request in Interrogatory No. 1, is obvious given the subject matter of the case, and obtaining it poses a minimal burden to the defendant.

Accordingly, the plaintiff's Motion to Compel is granted as to its Interrogatory No. 2. To protect the privacy interests of third parties, the defendant is only ordered to produce the year of birth of each interviewee and must do so by July 23, 2021.

## 2.    THE CONNECTICUT RM POSITION

Much like his requests concerning Mr. Finch, the plaintiff sought additional information and documents regarding the defendant's selection of Jeremy Conrey as the RM for the New England region that includes Connecticut. To that end, the plaintiff identified seven sub-issues in which he asserts that the defendant's discovery responses were either deficient or withheld entirely. To the extent that many of these discovery requests and responses mirror those concerning Mr. Finch, the same or substantially similar reasoning applies.

First, Interrogatory No. 6 asked the defendant to "[d]escribe the process involved in making the decision to hire Jeremy Conrey for the Regional Manager position . . . including the role of each person who was 'involved in making the decision.'" (Doc. No. 64-2 at 13). In its May 13, 2021 supplemental response, the defendant stated that, after being selected as one of the seven RGMs, Mr. Finch was responsible for hiring three RMs in his region. (Doc. No. 69-1 at 6). The plaintiff maintains that the defendant's response is deficient insofar as it does not provide the identities of the applicants that Mr. Finch interviewed for the three roles. (Doc. No. 69 at 3).

Like the plaintiff's Interrogatory No. 3, the identities of the applicants that Mr. Finch interviewed goes beyond the information requested in Interrogatory No. 6. In fact, the plaintiff's Interrogatory No. 5 asked the defendant to "[i]dentify and provide the date of birth of every person who was interviewed" for the RM position. (Doc. No. 64-2 at 11). Notwithstanding the defendant's failure to provide dates of birth for each RM applicant—which the Court addresses below—the defendant identified the interviewees in response to Interrogatory No. 5 and need not do so in response to Interrogatory No. 6. To the extent that the defendant identified the decision-maker (Mr. Finch) and his decision-making process (narrowing down applicants to three top candidates), the defendant sufficiently answered Interrogatory No. 6. Accordingly, the plaintiff's Motion to Compel as to Interrogatory No. 6 is denied.

Second, in his Request for Production No. 4, the plaintiff sought "[a]ll documents upon which the decision-maker(s) relied to select Jeremy Conrey for the position of Regional Manager for Connecticut, Rhode Island, Vermont, and New Hampshire." (Doc. No. 64-1 at 11). In its Memorandum in Opposition, the defendant asserted that it identified 63 pages of documents which it produced in response to the plaintiff's request. (Doc. No. 68 at 12). Like its response to Request for Production No. 2, however, the defendant similarly states that "it believes there are additional

documents that would be responsive" to the plaintiff's "overbroad request" but, based on its objections, it continues to withhold them. (Doc. No. 69-2 at 9).

Again, to the extent that the defendant withholds responsive documents based on its contention that the plaintiff's request is overbroad, the defendant, having offered no legal or factual basis in support of its objection, must respond fully to the plaintiff's Request for Production No. 4. Accordingly, the plaintiff's Motion to Compel as to his Request for Production No. 4 is granted, and the defendant must produce responsive documents by July 23, 2021.

The plaintiff's third, fourth, fifth, and sixth sub-issues all relate to Request for Production No. 3, wherein he requested all documents, "including all communications, concerning the process by which Jeremy Conrey was selected for the position of Regional Manager for Connecticut, Rhode Island, Vermont, and New Hampshire . . . includ[ing] all applications for the position; all solicitations for applications . . . all correspondence concerning whom to interview and the scheduling of interviews; and all notes concerning the interviews and the decision-making process." (Doc. No. 64-1 at 10).

Much like his Request for Production No. 1, the plaintiff sought email communications to and from the decision-makers—in this case Mr. Finch—related to the selection of Mr. Conrey, which the defendant conclusively asserts would be "virtually impossible" to locate and produce. (Doc. No. 68 at 12). Notably, however, the subject timeframe for responsive documents related to Mr. Conrey is only two weeks, an even shorter period than needed for Request for Production No. 1, which undermines any objections sounding in undue burden. (Doc. No. 69 at 4).

The plaintiff also seeks to compare the email communications sent to him by the defendant with those sent to and from Mr. Conrey about the applications for the RM position more generally. (Doc. No. 69 at 4-5). The plaintiff notes that, in its May 13, 2021 supplemental responses, the

defendant produced an email to Mr. Conrey about an interview for the RM position that did not pertain to his interview with Mr. Finch. (*Id.*). Additionally, in its May 18, 2021 supplemental responses, the defendant produced an email from Mr. Conrey to the recruiter dated July 22, 2019, wherein Mr. Conrey expressed his interest in being considered for the position. (*Id.* Doc. No. 68 at 13). The defendant maintains that it has produced all responsive documents related to this issue, however, based on the parties' filings, that would not appear to be the case. (Doc. No. 68 at 13). The plaintiff still seeks email communications between himself and the defendant concerning his application for the RM position. Although the defendant asserts that the plaintiff can access those records himself (Doc. No. 68 at 13-14), the plaintiff's emails auto-delete after three months, so they are not available to him if the defendant does not produce them. (Doc. No. 69 at 5). To the extent that the correspondence and solicitations between the defendant and Mr. Conrey may differ from those had with the plaintiff over the same span, the plaintiff's request is relevant to the needs of the case and proportional in light of the limited timeframe.

In addition to email communications, the plaintiff seeks Mr. Finch's interview notes and other documents concerning the defendant's "deliberative process." (Doc. No. 69 at 4). The plaintiff acknowledges that the defendant produced some interview notes but alleges that the defendant has not produced any documents concerning Mr. Finch's process in filling the three Northeast RM positions. (*Id.*). The defendant maintains that it has "no interview notes from Cam Finch responsive to this request." (Doc. No. 68 at 12).

Like the emails related to Mr. Conrey's selection, the plaintiff is entitled to Mr. Finch's interview notes and other responsive documents that assisted in the decision-making process. Although the plaintiff asserts that it "strains credibility that no such documents exist," it is certainly plausible that interview notes dating back two years are no longer in the defendant's possession.

(Doc. No. 69 at 4). The defendant maintains that it has produced, and continues to produce, interview notes responsive to the plaintiff's request; however, it has not produced emails concerning Mr. Conrey's selection, which are likely to contain the information that the plaintiff seeks. (*Id.* Doc. No. 68 at 12).

Accordingly, the plaintiff's Motion to Compel as to Request for Production No. 3 is granted. To the extent that the defendant has not produced all of the email communications between its decision-makers and recruiters, Mr. Finch, Mr. Conrey, and the plaintiff related to the solicitation and evaluation of their applications, the defendant is ordered to produce all of the correspondence between August 2, 2019 and August 15, 2019 by July 23, 2021. The defendant is further ordered to produce Mr. Finch's interview notes, to the extent that they exist, by July 23, 2021.

Seventh, as it relates to Interrogatory No. 5, the plaintiff sought the months and years of birth of all interviewees for the RM position. (Doc. Nos. 64-2 at 11, 69 at 5). Additionally, the plaintiff sought the identities of the applicants whom Mr. Finch interviewed for the three Northeast RM positions. (Doc. No. 69 at 5). Like Interrogatory No. 2, the plaintiff is entitled to the birth year of each interviewee, which the defendant shall produce. To the extent that the defendant has identified a list of 39 candidates who were interviewed for the RM position, however, no further production regarding the identity of interviewees is necessary. Finally, as stated previously, to the extent that the defendant produced a spreadsheet which tracked the applicants for the RGM and RM positions but made no reference to Mr. Conrey and Mr. Finch, the defendant shall produce the completed spreadsheet. (*See* Doc. No. 69 at 5). Accordingly, the plaintiff's Motion to Compel is granted as to its Interrogatory No. 5, and the defendant must produce the requested information on or before July 23, 2021.

3. THE NEW YORK RM POSITION

The plaintiff sought more limited information and documents concerning the defendant's selection of Gary Bennett as the RM for New York. (*Id.*). To that end, the plaintiff identifies two sub-issues, similar to the ones he articulated previously, in which he asserts that the defendant has refused to comply with his discovery requests.

First, in Request for Production No. 5, the plaintiff sought all documents, "including all communications, concerning the process by which Gary Bennett was selected for the position of Regional Manager for New York. Responsive documents should include all applications for the position; all solicitations for applications, whether individual or general; all correspondence concerning whom to interview and the scheduling of interviews; and all notes concerning the interviews and the decision-making process." (Doc. No. 64-1 at 13). Like his Request for Production No. 3, the plaintiff specifically sought interview notes from Mr. Finch and responsive emails concerning the defendant's selection of Mr. Bennett. (Doc. No. 69 at 5-6). The defendant maintains that it is not aware of any documents that would be responsive to the plaintiff's request but, notwithstanding, it "has produced and continues to produce as they are located" any interview notes related to the selection process. (Doc. No. 68 at 15).

As stated previously, the plaintiff is entitled to the interview notes of relevant decision-makers, namely, Mr. Finch, related to the selection of Mr. Bennett. To the extent that those notes exist and have not already been produced, the defendant shall produce them on or before July 23, 2021. Accordingly, the plaintiff's Motion to Compel as to Request for Production No. 5 is granted to the extent that the defendant has not already provided the requested information.

Second, in his Request for Production No. 6, the plaintiff sought "[a]ll documents upon which the decision-maker(s) relied to select Gary Bennett for the position of Regional Manager

for New York." (Doc. No. 64-1 at 8). In its Memorandum in Opposition, the defendant contends that it identified 14 pages of documents that it relied upon in making its decision to hire Mr. Bennett for one of the three RM positions and that this production resolves this issue. (Doc. No. 68 at 16). Nevertheless, in its April 30, 2021 supplemental response, the defendant stated that "it believes there are additional documents that would be responsive" to the plaintiff's "overbroad request" but, based on its objections, it continues to withhold them. (Doc. No. 64-1 at 15).

The defendant has offered no legal or factual basis in support of its objection that the plaintiff's Request for Production No. 6 is overbroad. The Court is not persuaded that this issue is resolved and, to the extent that the defendant is withholding responsive documents related to the selection of Gary Bennett for the position of RM, it must produce those documents by July 23, 2021. Accordingly, the plaintiff's Motion to Compel as to his Request for Production No. 6 is granted.

### 4.   PERFORMANCE HISTORIES

The plaintiff sought documents concerning his own performance history as well the performance histories of the individuals selected for the RGM and RM positions. (Doc. No. 69 at 6). The plaintiff notes that these documents, none of which are available to him, are necessary to rebut the defendant's denial of wrongdoing and to compare his credentials with those of the other applicants. (*Id.*). To that end, the plaintiff identifies four sub-issues in which he asserts that the defendant has refused to comply with his discovery requests.

The first two sub-issues raised by the plaintiff relate to Request for Production No. 8, which sought "[a]ll documents concerning the accomplishments of Mr. Shannon that are alleged in Paragraphs 23 and 51(b) of the Complaint." (Doc. No. 64-1 at 16). As to the specific accomplishments at issue, paragraph 23 of the Complaint alleges that the plaintiff's

"accomplishments in his role as Area Manager included: (a) Exceeding the majority of quotas in his last five years, despite significant price increases in all lines; (b) Earning the Area Manager of the Year award and five Life awards in his last six years; (c) Achieving the lowest sales representative turnover companywide among 27 Areas from 2013 to 2018; and (d) Leading the Training & Onboarding redesign project; creating an outbound call pilot; customizing and expanding the sales representative leadership (LEAD) program; and creating the 'Showtime' customer service delivery model, which was rolled out companywide." (Doc. No. 1 at 5). The defendant maintains its objections that the plaintiff's Request was overly broad, burdensome, immaterial to this case, and nothing more than a fishing expedition. (Doc. Nos. 64-1 at 16-17, 68 at 17).

After the parties met and conferred, the plaintiff refined the scope of his request to seek the year-end "New Business" reports from the defendant's "Centive System" for 2011 and 2014 to 2019. (Doc. No. 69 at 6). Despite producing the plaintiff's entire personnel file in its April 30, 2021 supplemental response, the defendant maintained its objection as to the Centive System reports as immaterial to the case because the information therein was not considered during the hiring process. (Doc. No. 68 at 17).

To the extent that the Centive System reports are likely to lead to the discovery of admissible evidence proportional to the needs of the case, the defendant's contention that they are immaterial is without merit. *See* FED. R. CIV. P. 26(b)(1). Specifically, the Centive System reports are the defendant's "official sales summary report[s]," which track "production versus quotas" for each sales representative. (Doc. No. 64-4 at 5). Although the defendant maintains that the reports were not considered during the hiring process, that does not preclude their disclosure. Furthermore, the plaintiff's Complaint alleges that he exceeded the majority of quotas in his last five years,

making the Centive System reports relevant evidence to support that allegation. The plaintiff appropriately seeks information about his accomplishments to rebut the defendant's contention that its hiring decisions were based on performance and not pretext. Thus, data related to the plaintiff's sales is relevant and should, therefore, be produced. *See* FED. R. CIV. P. 26(b)(1).

In connection with documents related to his accomplishments, the plaintiff also seeks the reports showing sales representative turnover by area from 2013 to 2018. (Doc. No. 69 at 6-7). The plaintiff alleged in his Complaint that his area achieved the lowest turnover companywide in his last six years under the defendant's employ (Doc. No. 1 at 5) and, to the extent that the defendant denies that contention, the plaintiff seeks the reports to support his allegation. (*Id.*). The defendant maintains that it produced 85 pages of documents responsive to the plaintiff's request and, therefore, the issue is resolved. (Doc. No. 68 at 17). The plaintiff, however, notes that none of those reports compare his area's performance to other area managers. (Doc. No. 69 at 7). Like the Centive System reports, the sales rep turnover reports are relevant to the plaintiff's accomplishments and, by extension, central to the thrust of the plaintiff's discrimination claim.

Accordingly, the plaintiff's Motion to Compel as to Request for Production No. 8 and the production of the Centive System reports for 2011 and 2014 to 2019 is granted, and the defendant shall produce this information by July 23, 2021. In addition, as to the defendant's production of documents related to the companywide sales representative turnover rate, to the extent that there are additional documents that better represent the plaintiff's area performance compared to other area managers, the defendant shall supplement its production by July 23, 2021.

Third, in Request for Production Nos. 10, 11, and 12, the plaintiff sought complete personnel files for Mr. Finch, Mr. Conrey, and Mr. Bennett dating from 2015 to 2019. (Doc. No. 69 at 7). To the extent that the defendant has produced the personnel files for all three employees

for 2018 and 2019, the defendant maintains that the issue is resolved. (Doc. No. 68 at 18). The defendant, however, offers no basis for its refusal to produce the responsive personnel files for the years of 2015, 2016, and 2017. Consequently, the defendant has not met its burden in limiting the discovery sought. *See Pearlstein v. Blackberry Ltd.*, 332 F.R.D. 117 (S.D.N.Y. 2019).

Moreover, courts in this circuit have permitted the disclosure of employee personnel files for this exact purpose. *See Culkin v. Pitney Bowes, Inc.*, 225 F.R.D. 69, 72 (D. Conn. 2004) (ordering production from employees' files because the information was relevant to the plaintiff's Family and Medical Leave Act claim); *see also Ruran v. Beth El Temple of West Hartford, Inc.*, 226 F.R.D. 165, 169 (D. Conn. 2005) (ordering disclosure of employees' personnel records in ADEA case because "a claim of disparate treatment begs the question: 'Disparate to what?'").

Accordingly, the plaintiff's Motion to Compel as to Request for Production Nos. 10, 11, and 12 is granted, and the defendant shall produce the personnel files of Mr. Finch, Mr. Conrey, and Mr. Bennett for 2015, 2016, and 2017 by July 23, 2021.

Fourth, in Request for Production No. 21, the plaintiff sought all documents and communications "concerning the process by which Taggart Bolen decided not to hire Jeremy Conrey as a Regional Manager within the Southeast Region Mr. Bolan managed, as described in Paragraph 48 of the Complaint." (Doc. No. 64-1 at 29). The defendant maintains that it has no documents responsive to this request. (Doc. No. 68 at 18). In light of the defendant's representation that no responsive documents exist, the plaintiff's Request for Production No. 21 is denied as moot.

### 5. OTHER EVIDENCE OF AGE DISCRIMINATION

The plaintiff also sought other evidence of age discrimination in connection with the rejection of applications. To that end, the plaintiff identifies four sub-issues in which he asserts that the defendant has refused to comply with his discovery requests.

First, in Request for Production Nos. 19 and 20, the plaintiff requested all documents related to the selection of sales directors, as described in Paragraph 57 of the Complaint. (Doc. No. 64-1 at 27-28). The plaintiff maintains that this discovery is relevant, not because the plaintiff applied for the position of sales director, but because Mr. Finch selected younger, less qualified applicants for the position, thus bolstering his claim that the defendant engages in a practice of age discrimination. (Doc. No. 69 at 7-8). The defendant objects to the plaintiff's requests on proportionality and overbreadth grounds, asserting that the sales director positions are not at issue and the documents related to the filling of those positions are immaterial. (Doc. No. 68 at 19-20).

The plaintiff's requests are not proportional to the needs of the case insofar as the burden and expense to the defendant in producing the documents sought outweighs their likely benefit. *See Tucker*, 281 F.R.D. at 91. Although evidence of other instances of age discrimination may be helpful to the plaintiff's case, the overbreadth of the information sought in Request for Production Nos. 19 and 20 renders the requests unduly burdensome. *See In re Corp. Sec. Litig.*, 221 F.R.D. 20, 23 (D. Conn. 2003) ("[D]iscovery may not be used as a fishing expedition to discover additional instances of wrongdoing beyond those already alleged." (citation and internal quotation marks omitted)).

Accordingly, the plaintiff's Motion to Compel is denied as to Request for Production Nos. 19 and 20.

Second, in Interrogatory Nos. 7, 8, and 9, the plaintiff sought the identities and dates of birth of individuals who held the titles of Area Manager, Regional General Manager, and Regional Manager before and after the defendant's 2019 reorganization. (Doc. No. 69 at 8). The plaintiff seeks this information pursuant to his allegation that the average ages of field sales managers under

the defendant's employ decreased from 52 years old to 45 years old following the reorganization. (*Id.*).

The plaintiff's request for the identities and dates of birth of other sales managers before and after the 2019 reorganization is relevant and proportional to the needs of the case. Notably, the requests themselves are narrow in scope, and the information sought should easily be accessible and impose no undue burden on the defendant to produce. Furthermore, courts in this circuit have held that circumstantial evidence revealing discriminatory practices is relevant and appropriate for discovery purposes. *See Hollander v. Am. Cyanamid Co.*, 895 F.2d 80, 84 (2d Cir. 1990) ("It is well-settled that an individual disparate treatment plaintiff may use statistical evidence regarding an employer's general practices at the pretext stage to help rebut the employer's purported nondiscriminatory explanation. . . . Evidence relating to company-wide practices may reveal patterns of discrimination against a group of employees, increasing the likelihood that an employer's offered explanation for an employment decision regarding a particular individual masks a discriminatory motive." (citations omitted)).

Accordingly, the plaintiff's Motion to Compel as to Interrogatory Nos. 7, 8, and 9 is granted. Again, the defendant need only produce each individual's year of birth and must do so by July 23, 2021.

Third, in Interrogatory No. 10, the plaintiff requested the date of birth for every member of management in the defendant's Field Distribution who left the company since January 1, 2015. (Doc. No. 64-2 at 17). Similarly, in Request for Production Nos. 16, 17, and 18, the plaintiff sought documents sufficient to establish the date of, and reason for, separation from Liberty Mutual of every member of management since January 1, 2015. (Doc. No. 64-3 at 18-19). The plaintiff maintains that these requests are relevant to his allegation that the defendant's senior sales

managers "observe an 'informal policy that they should retire by the time they turn 60,' which tends to support the inference that the defendant does not value older managers." (Doc. No. 69 at 8).

As an initial matter, Interrogatory No. 10 and Request for Production Nos. 16, 17, and 18 do not appear reasonably calculated to lead to the discovery of admissible evidence. To the extent that the plaintiff is relying only on the age of retired sales managers to support its allegations, its requests are speculative and, consequently, improper. *In re Corp. Sec. Litig.*, 221 F.R.D. at 23 ("[D]iscovery requests that are 'based on pure speculation and conjecture' are not permissible." (citation omitted)).

Relevance notwithstanding, the plaintiff's requests are not proportional to the needs of the case and unreasonable when weighed against the interests of the defendant. Unlike the plaintiff's Interrogatory Nos. 7, 8, and 9, which are narrowly drawn with particularity, these requests cover a wide range of documents over a long period of time. Ordering the defendant to produce responsive documents for every retired sales manager under its employ dating back to 2015 imposes a burden on it that outweighs the purported benefit to the plaintiff's claim.

Accordingly, the plaintiff's Motion to Compel as to Interrogatory No. 10 and Request for Production Nos. 16, 17, and 18 is denied.

Fourth, in Request for Production No. 19, the plaintiff sought "[a]ll written complaints of age discrimination by all management-level employees or former management-level employees in Liberty Mutual Field Distribution since January 1, 2010." (Doc. No. 64-3 at 20). The defendant states that there have been no reported cases of age discrimination among management-level employees in Connecticut since 2017. (Doc. No. 68 at 22). With respect to the plaintiff's request

for complaints dating back to 2010, the defendant objects on the basis of relevance, overbreadth, undue burden, and proportionality. (*Id.*).

As stated previously, courts in this circuit have held that discovery intended to reveal company-wide discrimination is relevant. *See Chen-Oster v. Goldman, Sachs & Co.*, 293 F.R.D. 557, 567 (S.D.N.Y. 2013) ("Evidence of company-wide patterns of discrimination 'may reveal discrimination against a particular group of employees' and thus be relevant." (citation omitted)). Courts have also allowed discovery into prior complaints in employment discrimination cases, albeit more narrowly. *See Sasikumar v. Brooklyn Hosp. Center*, No. 09CV5632 (ENV) (RML), 2011 WL 1642585, *4 (E.D.N.Y. May 2, 2011) ("In employment discrimination cases, courts in this circuit have frequently narrowed broad discovery requests for past complaints to those made by employees in a particular department or division. *See, e.g., Rifkinson v. CBS Inc.*, 94 Civ. 7985, 1995 WL 614565, at *1 (S.D.N.Y. Oct. 18, 1995) (narrowing a discovery request for complaints made by all employees of CBS News to those employees in job categories similar to plaintiff's); *Curtis v. Citibank, N.A.*, 70 F. App'x 20, 24 (2d Cir. 2000) (summary order) ('[T]he district court acted within its discretion in rejecting plaintiffs' sweeping discovery request for all formal and informal complaints of racial and sexual harassment and discrimination throughout the company, and in limiting discovery to the plaintiffs' supervisors and to their division.')")').

To the extent that the plaintiff alleges that the defendant has engaged in a company-wide pattern of age discrimination, the plaintiff may be entitled to a broader range of discovery into prior complaints. *See Chen-Oster*, 293 F.R.D. at 567 ("This limitation is commonly imposed in cases where an individual plaintiff does not allege a company-wide pattern or practice of discrimination, or where the allegations focus on a particular employment action in which decision-making was limited to that plaintiff's employment unit. . . . Courts have allowed broader

discovery of complaints if there is evidence that there were hiring or firing practices and procedures applicable to all employing units or if the requested information is particularly cogent to the matter or if the plaintiff can show a more particularized need for, and the likely relevance of, broader information." (citations and internal quotation marks omitted)).

The plaintiff's Request for Production No. 19, however, requests documents dating back to 2010. Although the plaintiff is entitled to evidence of company-wide complaints, the plaintiff's request must be viewed in light of the allegations of the Complaint, which focus on employment decisions that the defendant made in 2019. Thus, as to Request for Production No. 19, the plaintiff's Motion to Compel is denied.

6. COMPENSATION AND DAMAGES

Pursuant to his calculation of economic damages, the plaintiff sought documents concerning what the defendant paid him during his tenure and the compensation the defendant had provided to the RGMs and RMs in its field sales organization. (Doc. No. 69 at 9). To that end, the plaintiff identifies three sub-issues in which he asserts that the defendant has refused to comply with his discovery requests.

First, in Request for Production Nos. 24 and 25, the plaintiff asked for his complete payroll records and Form W-2 wage and tax statements, as well as all compensation plans applicable to him since the inception of his employment with the defendant in January 2008. (Doc. No. 64-3 at 24-25). To date, the defendant has produced the plaintiff's 2019 and 2020 paystubs as well as the 2019 Area Manager compensation plan. (Doc. No. 69 at 9). Additionally, the defendant produced compensation plans for the RGM and RM positions, which it asserts went beyond its discovery obligations. (Doc. No. 68 at 24). The plaintiff, however, seeks payroll records dating back to 2008

to "understand trends, which in turn might elucidate the compensation he would have received if he had been selected for the RGM or RM roles." (Doc. No. 69 at 9).

To the extent that the financial records sought are for the purposes of calculating damages, the plaintiff does not need payroll records dating back over a decade. The defendant, by producing records of what the plaintiff was earning as an Area Manager and what he could have made as a RM or RGM, has provided the plaintiff with the information he needs for his calculation of damages. Anything beyond the two-year period preceding the commencement of this action would not be proportional to the needs of the case. Furthermore, to the extent that the RGM and RM positions are applicable to the plaintiff insofar as he applied and was considered for those positions, the Court disagrees with the defendant's contention that the defendant went beyond its discovery obligations by producing the compensation plans.

Accordingly, to the extent that the defendant has not already done so, it must produce the plaintiff's complete payroll records, as well as the Area Manager, RGM, and RM compensation plans for the period of time between 2018 and 2020 by July 23, 2021.

Second, in Request for Production Nos. 26 and 27, the plaintiff sought complete payroll records and Form W-2 wage and tax statements for all persons who have held the title of RGM and RM following the 2019 reorganization. (Doc. No. 64-3 at 26 to 27). Again, the plaintiff's requests are not proportional to the needs of the case insofar as producing the records sought imposes an undue burden on the defendant. To the extent that the defendant has produced salary ranges for the positions at issue, as well as compensation plans, the defendant has fulfilled its discovery obligation and provided the plaintiff with sufficient evidence to conduct his damage calculation. Thus, the plaintiff's Motion to Compel as to Request for Production Nos. 26 and 27 is denied.

Third, in Request for Production No. 28, the plaintiff seeks compensation plans applicable to the Area Manager, RGM and RM positions since January 1, 2018. (Doc. No. 64-3 at 28). To the extent that it has not already done so, the defendant shall produce the responsive compensation plans. Accordingly, the plaintiff's Motion to Compel as to Request for Production No. 28 is granted, and the defendant must produce responsive documents by July 23, 2021.

III.   CONCLUSION

Accordingly, this Court concludes that the defendant's Motion to Compel (Doc. No. 65) is GRANTED IN PART and DENIED IN PART and the plaintiff's Motion to Compel (Doc. No. 64) is GRANTED IN PART and DENIED IN PART consistent with this Ruling as follows:

(1)  The Defendant's Discovery Requests:

on or before July 23, 2021, the plaintiff shall disclose the name, address, and telephone number of each of his psychiatric and physical providers with whom he obtained services, as well as the dates of and reasons for such services in response to Interrogatory Nos. 21 and 22;

on or before July 23, 2021, the plaintiff shall disclose all of the documents that he reviewed in forming his substantive responses to the defendant's interrogatories to the extent that he has not yet done so; and,

on or before July 23, 2021, the plaintiff shall provide responsive documents to the defendant's Request for Production No. 8.

(2)  The Plaintiff's Discovery Requests:

on or before July 23, 2021, the defendant shall produce all emails regarding the applicants' geographic preference responsive to the plaintiff's Request for Production No.

1 to the extent that it has not yet done so. Additionally, the defendant shall produce a complete spreadsheet that includes Mr. Conrey's application;

on or before July 23, 2021, the defendant shall produce the decision-makers' email communications concerning Mr. Finch's hiring in response to the plaintiff's Interrogatory No. 3;

on or before July 23, 2021, the defendant shall produce all of its outgoing email solicitations directed to Mr. Finch, as described in the plaintiff's Request for Production No.1, to the extent that those correspondence exist;

on or before July 23, 2021, the defendant shall produce documents responsive to the plaintiff's Request for Production No. 4;

on or before July 23, 2021, the defendant shall produce all email communications between its decision-makers and recruiters, Mr. Finch, Mr. Conrey, and the plaintiff related to the solicitation and evaluation of their applications between August 2, 2019 and August 15, 2019. Additionally, to the extent that they exist, the defendant shall produce Mr. Finch's interview notes;

on or before July 23, 2021, the defendant shall produce the responsive information to the plaintiff's Interrogatory No. 5;

on or before July 23, 2021, the defendant shall produce documents responsive to the plaintiff's Request for Production No. 5 to the extent that it has not yet done so;

on or before July 23, 2021, the defendant shall provide the documents that it is withholding that are responsive to the plaintiff's Request for Production No. 6 related to the selection of Gary Bennett for the position of RM;

on or before July 23, 2021, the defendant shall produce all responsive documents to the plaintiff's Request for Production No. 8, which includes the Centive System reports for 2011 and 2014 to 2019 as well as documents related to the companywide sales representative turnover rate to the extent that there are additional documents that better represent the plaintiff's area performance compared to other managers;

on or before July 23, 2021, the defendant shall produce the responsive documents to the plaintiff's Request for Production Nos. 10, 11, and 12, which includes the personnel files of Mr. Finch, Mr. Conrey, and Mr. Bennett for 2015, 2016, 2017;

on or before July 23, 2021, the defendant shall produce only the identities and years of birth for individuals identified in response to the plaintiff's Interrogatory Nos. 7, 8, and 9;

on or before July 23, 2021, the defendant, to the extent that it has not yet done so, must produce the plaintiff's complete payroll records as well as the Area Manager, RGM, and RM compensation plans for the period of time between 2018 and 2020 in response to the plaintiff's Request for Production Nos. 26 and 27; and,

on or before July 23, 2021, the defendant shall produce the compensation plans responsive to the plaintiff's Request for Production No. 28.

This is not a Recommended Ruling. This Ruling is reviewable pursuant to the "clearly erroneous" statutory standard of review. *See* 28 U.S.C. § 636(b)(1)(A); FED. R. CIV. P. 72(a); and D. CONN. L. CIV. R. 72.2. As such, it is an order of the Court unless reversed or modified by the district judge upon timely made objection.

Dated at New Haven, Connecticut, this 28th day of June, 2021.

    /s/ Robert M. Spector
Robert M. Spector
United States Magistrate Judge